**NOT FOR PUBLICATION**

```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY


TRIMAINE NOREIGA,              :
                                    Civil Action No. 10-4805 (RBK)
          Petitioner,          :

     v.                        :    OPINION

WARDEN PAUL M. SCHULTZ,        :

          Respondent.          :
```

**APPEARANCES:**

Trimaine Noreiga                Irene E. Dowdy
19417-057                       Office of the US Attorney
FCI Fairton                     401 Market Street
P.O. Box 420                    Fourth Floor
Fairton, NJ 08320               P.O. Box 2098
Petitioner pro se               Camden, NJ 08101

**KUGLER**, District Judge

    Petitioner Trimaine Noreiga, a prisoner currently confined at FCI Fairton, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] challenging the results of a

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

1

prison disciplinary proceeding. Warden Paul Schultz is named as the sole respondent.

Petitioner has been granted in forma pauperis status. Because it appears from a review of the Petition that Petitioner is not entitled to relief, the Petition will be dismissed. See 28 U.S.C. § 2243.

## I.  BACKGROUND

Petitioner is a federal prisoner serving a federal prison term of 100 months with three years supervised release pursuant to his conviction for Bank Robbery in violation of 18 U.S.C. § 2113(A).  His projected release date is March 3, 2012.

The following Incident Report was filed against Petitioner:

> "On December 18, 2009 at 8:12 a.m., inmate Noreiga, Thrimaine [sic] Reg. NO. 19417-057 was directed to provide a urine sample for testing (Suspect Specimen # BOP0001078667). At that time inmate Noreiga was provided with one 8 ounce cup of water.  At 10:12 a.m. inmate Noreiga was given a direct order to provide a urine sample.  At this time inmate Noreiga refused to provide a sample as directed.  The Operations Lieutenant was notified that inmate Noreiga refused to provide a urine sample as directed.  Inmate Noreiga than [sic] stated that he had a problem urinating when he was under pressure and that he had talked [to] health services about his problem.  I than [sic] proceeded to talk to health services about what the inmate had stated and they have no such record of the problem.  Inmate Noreiga was than [sic] placed in the Special Housing Unit."

Petitioner received a copy of the Incident Report on that same day.  At that time, Petitioner was advised of his rights by Investigating Lieutenant D. McCabe.  The initial hearing was held before the Unit Discipline Committee ("UDC") on December 22,

2009. Petitioner made no comment at the hearing. The incident report was then referred to the Discipline Hearing Officer ("DHO"). Petitioner did not request representation or that any witnesses appear at the DHO hearing. The DHO hearing was held on December 31, 2009. Petitioner did not present any evidence in support of his denial of the charges. After the incident report was read, Petitioner stated to the DHO: "I couldn't go. I had this problem before."

At the conclusion of the DHO hearing on June 2, 2008, it was determined that Petitioner committed the prohibited act as he was charged and received the following sanctions: disallowance of forty days of good conduct time ("GCT"), eighteen months of loss of visitation privileges, and then eighteen months of visiting restricted to immediate family only.

Petitioner appealed the DHO's decision, stating that he did not refuse to give a urine sample but that he was unable to do so and should have been given more time. The appeal was denied, with the explanation:

> "In your appeal, you do not deny failing to provide a urine sample on December 18, 2009. At 8:12 a.m., the reporting officer stated you were notified that you had two hours to provide a urine sample. By 10:12 a.m., you did not provide a sample. You told the reporting officer you had a problem urinating and you talked to medical about it. Staff called Health Service and medical staff stated there was no reason why you could not provide a sample. You told the DHO, you could not urinate and you had the problem before. Program Statement 6060.08, <u>Urine Surveillance and Narcotic Identification</u> states, if an inmate is unable to provide a urine sample within two hours, there is a presumption the

3

>  inmate is unwilling to provide it.  Based on the evidence
>  presented, the DHO determined you did not adequately rebut
>  the presumption and reasonably found you committed the
>  prohibited act.  Unless there is documentation of a medical
>  problem or medication you are taking, that prohibits you
>  from providing a urine sample, you will be subject to
>  disciplinary action if you fail to provide a urine sample
>  when ordered.  Your medical records must also document the
>  need to give you more than two hours to provide a sample as
>  outlined in policy."

Petitioner then submitted a Central Office Administrative Remedy Appeal.  He did not receive a response.  It appears that Petitioner exhausted his administrative remedies before filing this Petition.

Petitioner alleges that he "suffers from an anxiety disorder call [sic] paruresis, which at times impede him from providing urine under pressure and within the 2-hour time period."  However, no such evidence of this alleged condition was available at the time of the incident or the subsequent hearings.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

>  A court, justice or judge entertaining an
>  application for a writ of habeas corpus shall forthwith
>  award the writ or issue an order directing the
>  respondent to show cause why the writ should not be
>  granted, unless it appears from the application that
>  the applicant or person detained is not entitled
>  thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).

A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989).  See also 28 U.S.C. §§ 2243, 2255.

### III.  ANALYSIS

#### A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).  Accordingly, this Court has jurisdiction to hear Petitioner's challenge to disciplinary sanctions.

#### B.  Petitioner's Claims

Petitioner alleges that the disciplinary hearing held by the

DHO and the resulting sanctions deprived of him of liberty without due process of law.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Wilwording v. Swenson</u>, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  <u>Wolff</u>, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a

6

sanction,[2] the prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time

---

[2] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

credits, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill</u>, 472 U.S. 445, 454-56 (1985).[3]

Here, Petitioner has not alleged any facts that would indicate that the disciplinary hearings and resulting sanctions were contrary in any way to the requirements set forth by the <u>Wolff</u> standard.  It is clear that the findings of the Disciplinary Hearing Officer are supported by "some evidence," as Petitioner himself admits that he was not able to provide the urine sample within the time allotted.  Petitioner alleges to have a medical condition which prevented him from providing the sample, no record of such condition was noted in his medical files at the time of the December 18, 2009 incident.  As such, Petitioner was not deprived of due process in connection with the challenged disciplinary proceeding and thus the Court will deny his Petition.

---

[3] The due process requirements of <u>Wolff</u>, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq.  <u>See</u>, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

IV. <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.

<u>s/Robert B. Kugler</u>
Robert B. Kugler
United States District Judge

Dated: May 12, 2011